IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MYRNA YVETTE OVIATT,                )
                                    )
                    Plaintiff,      )        Civil No. 05-1823-JO
                                    )
            v.                      )        OPINION AND ORDER
                                    )
COMMISSIONER, SOCIAL SECURITY       )
ADMINISTRATION,                     )
                                    )
                    Defendant.      )

     Alan S. Graf
     ALAN STUART GRAF, PC
     P. O. Box 98
     Summertown, TN  38483

     Kimberly K. Tucker
     SWANSON THOMAS & COON
     820 S.W. Second Avenue, Suite 200
     Portland, OR  97204

     Attorneys for Plaintiff

Franco L. Becia
Michael McGaughran
SOCIAL SECURITY ADMINISTRATION
Office of General Counsel
701 Fifth Avenue
Suite 2900, M/S 901
Seattle, WA  98104

Neil J. Evans
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

   Attorneys for Defendant

JONES, Judge:

Claimant Myrna Oviatt seeks judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("SSA").  *See* 42 U.S.C. §§ 401-33, 1381-83f.  This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Following a careful review of the record, I conclude that the decision of the Commissioner is supported by substantial evidence, contains no errors of law, and must be affirmed.

## ADMINISTRATIVE HISTORY

Claimant filed an application for SSI on June 17, 2002, alleging an inability to work beginning May 25, 2002.  The application was denied initially and on reconsideration.  Claimant requested a hearing, which was held before an Administrative Law Judge ("ALJ") on June 17, 2004.  Claimant, who was represented by counsel, appeared and testified.  A vocational expert ("VE") also testified at the hearing.  On October 25, 2004 the ALJ issued a decision denying the

application based on a finding that claimant was not disabled as defined by the SSA.  This

decision became final on October 3, 2005 when the Appeals Council declined review.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence on the record as a whole.

42 U.S.C. § 405(g); *see also* Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).  The court must

weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion."

Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be

upheld if it is a rational interpretation of the evidence, even if there are other possible rational

interpretations.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989); Andrews, 53 F.3d at

1039-40.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ engaged in the five-step "sequential evaluation" process when he evaluated

claimant's disability, as required.  *See* 20 C.F.R. § 416.920.  First, the ALJ concluded that

claimant had not engaged in any substantial gainful activity since the date of her alleged

disability.  Tr. 19.  This is not disputed.  Second, the ALJ concluded that Claimant suffers from

severe impairments in the form of "an organic mental disorder, an affective disorder, an anxiety

disorder, [a] personality disorder and [a] substance addiction disorder."  Tr. 27.  Again, this is

not disputed.  Third, the ALJ concluded that claimant's impairments do not meet or equal the

criteria in the Listing of Impairments, Appendix 1, Subpart P, Regulations Part 404.  Tr. 23.  In

particular, the ALJ concluded that claimant's impairments did not satisfy the requirements of

Listing 12.05(C), which describes mental retardation. 20 C.F.R. Pt. 404, Subpt. P, App. 1. To

satisfy Listing 12.05(C), the claimant must demonstrate, in addition to an intelligence quotient

("IQ") score between 60 and 70, that the claimant suffers from "a physical or other mental

impairment imposing an additional and significant work-related limitation of function." 20

C.F.R. Pt. 404, Subpt. P, App. 1. The claimant must also demonstrate that this mental incapacity

"initially manifested during the developmental period; *i.e.,* the evidence demonstrates or

supports onset of the impairment before age 22." Id. In this case, the ALJ found no evidence

that claimant's mental deficiencies had manifested before age 22. Tr. 23. Instead, the ALJ

concluded that claimant's mental functioning likely resulted from a lifetime of substance abuse,

lifestyle choices and a "lack of interest in tak[ing] the tests." Id.

     In Step 4, the ALJ determined that claimant has the residual functional capacity ("RFC")

"to engage in simple, one to three step work tasks [that require] limited interaction with the

public and co-workers and [avoid] active hazards." Tr. 25. As a result of her substance abuse,

the ALJ concluded that claimant would have "two or more unscheduled workdays per month."

Id. The ALJ also found that "claimant lacks any past relevant work" and, therefore, cannot

return to past relevant work. Id. In Step 5, the VE considered claimant's RFC and determined

that claimant would not "be able to perform other work that exists in significant number in the

national economy." Tr. 26. As a result, the ALJ concluded that claimant is disabled.

     Notwithstanding that finding, because drug abuse and alcoholism ("DAA") are elements

of claimant's disability, the ALJ was required to determine whether substance abuse is a material

factor in claimant's disability. The key to determining if DAA is a material factor is whether the

claimant would still be disabled if she stopped using alcohol and drugs.  <u>Bustamante v.</u>

<u>Massanari</u>, 262 F.3d 949, 955 (9th Cir. 2001).  Here, the ALJ determined that if claimant stopped

using alcohol and drugs she would have the same RFC, but would not require one or two

unscheduled workdays per month.  Tr. 26.  Assuming this change, the VE testified that claimant

"would be able to perform other work which exists in significant number in the national

economy."  <u>Id.</u>  Therefore, because claimant's DAA is material to her disability, the ALJ

concluded that she is not disabled.

## <u>STATEMENT OF FACTS</u>

Claimant was born May 2, 1967.  She has a long history of drug and alcohol abuse,

beginning in childhood and intensifying throughout her adolescence and adulthood.  Claimant

testified that she took her first drink from her mother's glass at age nine.  Tr. 780.  She began

drinking a couple of times a week during high school.  Tr. 781.  Claimant began smoking pot in

her teens and using cocaine in her twenties.  Tr. 782, 780.  Claimant was incarcerated in 1996

and released in June of 2001.

While incarcerated, claimant worked on a cleaning crew.  Tr. 190, 193, 201, 219.  The

record reveals that claimant consistently suffered from mental and emotional problems.  She saw

medical and mental health staff frequently and was taking several prescription medications,

including Effexor, Clonidine, Neurontin, Risperdal, Vistaril, Tegretol, and Zyprexa, in varying

combinations.  Tr. 174, 189, 195, 223, 256.  Claimant complained of stress, anxiety, nightmares

and agitation.  Tr. 233, 250.  Claimant is reported as being "increasingly stressed and desperate"

and hearing voices.  Tr. 251.  Claimant reported spiders talking to her and other auditory

hallucinations.  Tr. 256, 261.  After losing two close friends, claimant reported hearing the

voices of those friends, having conversations with the deceased individuals and being

"hysterical." Tr. 261, 262. Claimant complained of "severe depression/hopelessness/anxiety."

Tr. 304. Shortly before her release from prison, however, claimant demonstrated improvement.

In a report, from April 18, 2001, claimant is described as "alert and oriented to self, place and

situation," "[e]asily engaged in conversation, " and "express[ing] thoughts [that are] organized

and linear." Tr. 174.

      In July 2001, Dr. Donna Wicher, a medical and clinical psychologist, evaluated claimant.

Dr. Wicher diagnosed claimant with Major Depressive Disorder, Polysubstance Abuse presently

in remission, Borderline Personality Disorder, and Antisocial Personality Disorder. Tr. 364. Dr.

Wicher "anticipated that [claimant would] continue to demonstrate similar personality features in

the future." Tr. 365. In addition, Dr. Wicher reported that claimant "is of [b]orderline

intellectual ability" but that there is no evidence of organic brain impairment or restrictions on

daily living. Tr. 366. Dr. Wicher cited claimant's impulsivity, difficulty with concentration,

inability to control anger, dramatic mood fluctuations and tendency to decompensate as "the

greatest obstacles . . . to gainful employment." Id. As to her substance abuse, Dr. Wicher

concluded that claimant's ability to return to work would be enhanced were she to abstain from

alcohol and drugs. Id.

      In October 2001, claimant was incarcerated for forty-five days after violating the

conditions of her parole by using alcohol. She was again incarcerated between April and June of

2002 for "failure to report." Tr. 387. After her release, she began treatment for drug and alcohol

abuse and was evaluated by Dr. Wicher a second time. The evaluation, on July 10, 2002, was

intended to "determine whether there are any mental, cognitive, or emotional difficulties which

would interfere with [claimant's] ability to be gainfully employed." Tr. 383. Dr. Wicher reported that claimant was generally alert during the interview, but seemed to be drowsy during testing. Tr. 384. She also noted that claimant "[appeared] to be subject to frequent, brief episodes of psychological decompensation." Tr. 385. Claimant performed poorly on an IQ test, placing her in the Extremely Low Range of intellectual ability. Id. Although Dr. Wicher partially attributed claimant's low scores to her drowsiness and desire to finish the testing quickly, she also noted that claimant "did not appear to be making a conscious effort to present herself as impaired . . . ." Tr. 386. However, Dr. Wicher also concluded that the claimant's profile was invalid because it "most likely reflects an attempt to exaggerate her level of emotional distress." Id. Dr. Wicher did not determine whether claimant was capable of sustaining gainful employment, although she did note that "participating in treatment and remaining abstinent from substance abuse would increase the likelihood that [claimant] can sustain gainful employment." Tr. 389.

In September 2002, claimant asked a mental health practitioner to report her impairment as marked, instead of moderate, presumably to help her get disability benefits. Tr. 420. In March 2003, claimant went to the Emergency Room at Providence Hospital following a drug and alcohol binge lasting several days. Tr. 518, 522, 523. In May 2003, she was admitted to Oregon Health and Sciences University Hospital, anxious and hyperventilating after two days of using alcohol and cocaine. Tr. 550. Claimant sought alcohol and drug treatment at CODA, Inc., an outpatient substance abuse treatment program, in May and October of 2003. In both instances, claimant terminated treatment "against staff advice." Tr. 597, 591.

7 - OPINION AND ORDER

In December 2003, Dr. Frank Colistro, a licensed psychologist, evaluated claimant. Tr. 598.  He observed "the presence of severe emotional and characterologic disturbance[s] in [claimant] which have exerted a profoundly negative impact on her life in all domains."  Tr. 600.  Dr. Colistro expressed his belief that claimant's "conditions are not the result of current or past substance abuse or dependence."  Tr. 601.  He did not arrive at an explicit conclusion as to whether claimant would be capable of sustaining gainful employment, but noted that "[d]eficiencies in concentration, persistence and pace resulting in failure to complete tasks in a timely manner occur constantly, as do episodes of deterioration or decompensation in work or worklike settings . . . ."  Id.  However, Dr. Colistro's examination of claimant did not include a review of the record and his conclusions were based solely on claimant's uncorroborated representations.  Tr. 21.

In a June 7, 2004 letter, Heidi Jolson of Cascadia Behavioral Healthcare, a mental health and addiction treatment facility, reported that claimant had been "enrolled in Cascadia off and on since December 2001" and had a poor record with respect to attendance and follow-through. Tr. 624.  Though she declined to provide a conclusion as to claimant's "ability to maintain full-time employment," Ms. Jolson did express a general belief that claimant would have a difficult time doing so.  Id.

On November 4, 2004 claimant was admitted to Providence hospital in a suicidal state after a drug and alcohol relapse involving alcohol, crack cocaine, marijuana and methamphetamine.  Tr. 638, 639.  Claimant expressed a desire to cut her wrists and reported auditory hallucinations.  Tr. 639.  She was released on November 9, 2004 with plans to contact a

substance abuse treatment center.  Tr. 692.  The record does not reflect whether or not claimant

did so.

9 - OPINION AND ORDER

**DISCUSSION**

Claimant challenges the final decision of the Commissioner on two grounds:  (1) claimant's drug impairment is not material to her disability and (2) her impairment meets the requirements of Listing 12.05(C).  Claimant also contends that the court should order the Commissioner to reopen Claimant's prior application, dated August 14, 2001.  These issues are addressed in order.

    1. DAA as material factor

Claimant argues that her drug and alcohol abuse are not material to her disability.  A drug and alcohol abuse problem is material to a finding of disability where the claimant would no longer be disabled if he or she stopped using alcohol and drugs.  See Bustamante, 262 F.3d 949, 955 (9th Cir. 2001).  Where it is difficult to separate the disability from the impairments caused by substance abuse, it is helpful to evaluate the claimant's impairments during a period of abstinence from drug and alcohol abuse, if one exists.  SSA Emergency Teletype No. EM-96-131 § III(a)(5).  Additionally, "[w]hen it is not possible to separate the mental restrictions and limitations imposed by DAA and the various other mental disorders shown by the evidence, a finding of "not material" would be appropriate."  Id.  Here, the ALJ determined that claimant currently has the RFC to "engage in simple, one to three step work tasks with limited interaction with the public and co-workers and [avoid] active hazards."  Tr. 25.  However, due to her substance abuse, claimant "would have two or more unscheduled workdays per month."  Id.  The VE determined that claimant would not be able to perform substantial gainful activity due to the unscheduled workdays.  Tr. 26.  If, however, claimant abstained from drugs and alcohol, unscheduled workdays would not be a part of her RFC.  Id.  In this circumstance, the VE

testified that claimant "would be able to perform substantial gainful activity" in a variety of jobs. Id. As a result, the ALJ concluded that in the absence of claimant's substance abuse problem, she would be able to work. Id. Because claimant's DAA is material to her disability she is not disabled for purposes of the SSA.

Claimant argues that this conclusion was not based on substantial evidence. First, she asserts that the ALJ's references to her janitorial job in prison were inappropriate because there is no evidence that her duties were commensurate with full-time employment. However, the record reflects that claimant was a member of the janitorial staff from at least 1997 to 2001. Tr. 190, 219, 316. According to the SSA, it is helpful to consider a period of sobriety when making a determination as to whether the DAA is material. SSA Emergency Teletype No. EM-96-131 § III(a)(5). That claimant was able to consistently perform in an employment capacity while incarcerated and presumably sober sheds light on the materiality of her substance abuse problem to her alleged disability. Therefore, the ALJ's reliance on claimant's janitorial work is proper.

Claimant next argues that the ALJ improperly assumed that she was sober during her period of incarceration. Although prisons are not always drug free environments, there is no evidence in the record to suggest that claimant used drugs or alcohol in prison. She was seen regularly by mental health professionals and other staff and the record contains no evidence of drug or alcohol use.

Finally, claimant argues that the ALJ did not give proper weight to the examining psychologists' opinions. Claimant correctly notes, "the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir.

1995).  Substantial evidence is defined as "more than a scintilla but less than a preponderance."

Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir.1997).  "Further, an ALJ may discredit treating

physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . ."

Batson v. Commissioner, 359 F.3d 1190. 1195 (9th Cir.2004).  Here, both Dr. Wicher and Dr.

Colistro are examining physicians.  Their opinions, in general, do not contradict one another,

except that Dr. Wicher sees claimant's substance abuse as an obstacle to gainful employment

whereas Dr. Colistro does not.

  In her first examination, on July 19, 2001, Dr. Wicher concluded that claimant's chances

of returning to work would be compromised by continued alcohol and drug abuse, but did not

express a conclusion as to whether claimant could return to work.  Tr. 366.  The ALJ gave little

weight to Dr. Wicher's examination for the following reasons.  First, Dr. Wicher stated that the

results of the MMPI-2 were invalid "due to [claimant's] excessive endorsement of unusual

items."  Tr. 364.  Second, Dr. Wicher does not take into account prison records showing that

claimant was able to work and doing well on her medications.  The ALJ found Dr. Wicher's

conclusions at odds with the records of those who treated claimant in prison.  Third, Dr. Wicher

failed to take claimant's substance abuse into consideration in evaluating her ability to interact

socially.

  The ALJ also gave little weight to Dr. Wicher's June 2002 examination of claimant

because she reportedly "failed to give a full effort during the testing and appeared to be drowsy."

Tr. 20.  In her report, Dr. Wicher wrote "[claimant's] profile most likely reflects an attempt to

exaggerate her level of emotional distress.  Because the profile is invalid, no meaningful

interpretation of the clinical scales is possible."  Tr. 386.  That the ALJ chose not to rely on this

12 - OPINION AND ORDER

examination is rational and based on claimant's likely attempt to "exaggerate [her] level of emotional distress either to obtain personal gain or elicit help and support from others."  Id. Further, Dr. Wicher's conclusion does not contradict that of the ALJ.  Dr. Wicher concluded that "participating in treatment and remaining abstinent from substance abuse would increase the likelihood that she can sustain gainful employment."  Tr. 389.  The ALJ gave proper weight to Dr. Wicher's findings.

Dr. Colistro examined claimant on December 1, 2003.  He concluded that claimant's "conditions are not the result of current or past substance abuse or dependence."  Tr. 601. However, Dr. Colistro did not review claimant's record and based his conclusions solely on claimant's uncorroborated account.  As noted in Batson, where a physician's opinion is not based on the record as a whole, it can be discredited by the ALJ.  Here, Dr. Colistro's conclusions are not based on the record as a whole.  First, his written opinion acknowledges that his conclusions are based on "the following uncorroborated history."  Tr. 598.  Second, because Dr. Colistro is unfamiliar with claimant's records, he is unaware of her "extensive history of being a poor historian, exaggeration, and continued polysubstance abuse . . . ."  Tr. 21.  For example, during the examination, claimant admits to substance abuse problems in the past "but avers that she has been involved in substance abuse relapse prevention programming since she went to prison in 1996, and since then has relapsed only occasionally."  Tr. 598.  The record reveals, however, that her substance abuse problems were far more serious than this characterization suggests.  Among other things, Claimant was hospitalized twice in 2003 as a result of drug and alcohol use. Tr. 525, 550.  On April 13, 2003, claimant's girlfriend called the Mobile Crisis Team to report claimant behaving violently and smelling of alcohol.  Tr. 620.  A similar incident is reported on

13 - OPINION AND ORDER

March 14, 2003.  Tr. 621.  The ALJ's decision to disregard Dr. Colistro's conclusions as to claimant's drug and alcohol abuse is substantially supported by the record.

2. Listing 12.05(C)

Claimant argues that the ALJ erred in his Step 3 determination that she did not satisfy the requirements of Listing 12.05(C).  To satisfy the listing for mental retardation, claimant must present evidence that "demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.  Thus, claimant had to demonstrate that her borderline intellectual functioning had set in during her developmental stage, *i.e.* before age 22.  According to the ALJ, claimant failed to establish this threshold element of Listing 12.05(c).  The record supports that finding.

First, the IQ tests in question were administered when claimant was ages 34, 35, and 36, well after the conclusion of claimant's developmental period.  Tr. 362, 385, 600.  Claimant argues that an inference should be drawn that the current scores reflect what her scores would have been had she been tested before age 22, citing Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir. 2001) ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.")  (internal quotation marks omitted).  Claimant cites Maresh v. Barnhart, 438 F.3d 897, 900 (8th Cir. 2006), where the court recognized that "the record indicates that Maresh's mental retardation initially manifested itself before age 22." Among other things, the record stated that Maresh had been in special education classes until he dropped out of school in ninth grade.  The record also showed that he consistently had difficulties with reading, writing and math.  In this case, in contrast, claimant's school records do not show that she was in special education classes, only that she tended to perform poorly in core

subjects.  Nothing in the records establish that claimant was considered to be mentally retarded.

In fact, claimant went on to earn her GED.

According to the Federal Regulations, the ALJ is permitted "to use judgment, based on

current evidence, to infer when the impairment began."  65 Fed. Reg. 50753 (2000).  That is, the

inference that claimant's IQ would have been the same if tested during her developmental period

is permissible, not mandatory, and the proper inference is drawn from consideration of the record

as a whole.  Here, the ALJ concluded from the record that claimant's mental impairment did not

manifest itself before age 22.  This conclusion is supported by substantial evidence in the record.

        3. <u>Reopening of Prior Application</u>

        Claimant argues that her application of August 14, 2001 should be reopened and benefits

paid from the date of initial application.  However, judicial review by this court is available only

for final agency decisions to deny benefits.  Review is not available for an alleged abuse of

discretion in refusing to reopen a social security claim.  <u>Califano v. Sanders</u>, 430 U.S. 99, 107-08

(1977).  The regulation claimant cites applies to administrative review within the Social Security

Administration and does not extend to judicial review.  20 CFR § 416.1488(a) (found under

Subpart N, entitled "Determinations, Administrative Review Process, and Reopening of

Determinations and Decisions").  Claimant's proper avenue to reopen her application is through

the Social Security Administration itself.  Accordingly, this court denies her request to reopen

the application and award benefits from that date.

## <u>CONCLUSION</u>

For the reasons stated, the decision of the Commissioner denying benefits is affirmed.

DATED this 30th day of March, 2007.


   /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge